NOT FOR PUBLICATION

**FILED**

JEANNE A. NAUGHTON, CLERK

AUG – 4 2017

U.S. BANKRUPTCY COURT
CAMDEN, N.J.

BY_____DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

-----------------------------------------------------X

In Re:

NICHOLAS FARAGASSO and LAURA
FARAGASSO,

          Debtors.

-----------------------------------------------------X

MARIO LANCIONI and SEAN FAGAN,

       Plaintiffs,

v.

NICHOLAS FARAGASSO,

       Defendant.

-----------------------------------------------------X

CHAPTER 7

CASE NO. 16-34107 (JNP)

ADV. PRO. NO. 17-1317

**OPINION**

**APPEARANCES:**

Ellen M. McDowell, Esq.
McDowell, Posternock, Apell & Detrick, PC
46 West Main Street
Maple Shade, New Jersey 08052
*Attorneys for Plaintiffs, Mario Lancioni and Sean Fagan*

Andrew B. Finberg, Esq.
Daniel A. Frischberg, Esq.
Law Offices of Andrew B. Finberg, LLC
525 Route 73 South, Suite 200
Marlton, New Jersey 08053
*Attorneys for Defendant, Nicholas Faragasso*

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

The Plaintiffs allege that shortly after the Defendant was discharged he reopened a photo

booth company which was contrary to the Defendant's testimony at his 341 Meeting. The

NOT FOR PUBLICATION

Plaintiffs allege that the Defendant lied about his plans for the business. They further argue that they could not take any action prior to the discharge because the Defendant did not resume operations until after the discharge and they had no way to know the Defendant would resume operations until he actually reopened. Therefore, the Plaintiffs argue that the discharge should now be revoked under 11 U.S.C. § 727(d)(1). The Defendant filed a motion to dismiss the complaint (the "Motion") arguing that the Plaintiffs had sufficient information prior to the discharge to conduct a further investigation or to oppose entry of the discharge. For the reasons discussed herein, the Motion will be granted.

### Background

Nicholas Lancioni and Sean Fagan (the "Plaintiffs") filed an adversary complaint seeking revocation of Nicholas Faragasso's (the "Defendant") discharge under 11 U.S.C § 727(d)(1) – for fraud that was not discovered until after the discharge was entered. Plaintiffs allege that the Defendant committed fraud by testifying at the § 341(a) meeting of creditors (the "341 Meeting") that he did not intend to operate his photo booth business going forward, but resumed operations shortly after his discharge. Moreover, because the Defendant did not restart operations until after the discharge was entered, the Plaintiffs argue that they could not have sought relief until now. The Plaintiffs further argue that if the income from the photo booth business were included in the Debtors' income they would have been compelled to convert their case to Chapter 13 and provide a distribution to creditors. Therefore, according to the Plaintiffs, the discharge should be revoked and the Debtors should be required to convert their case and proceed with a Chapter 13 plan.

The Defendant argues that the proffers and his testimony were not that he was shutting down the photo booth business permanently. He also argues that the Plaintiffs could have conducted discovery prior to the discharge to understand his intentions. Finally, the Defendant

NOT FOR PUBLICATION

argues that some of the information upon which the Plaintiffs rely was obtained in violation of

the Rules of Professional Conduct, and that this is an additional basis to dismiss the complaint.

### Facts

The following facts are either alleged in the Complaint; included in the Transcript of the

341 Meeting which is attached to the Complaint; or in the Amended Statement of Financial

Affairs (the "Amended Statement"), which is referenced in the Complaint.[1]  The Plaintiffs and

Defendant are partners in a yogurt business, and all three guaranteed a business loan related to

that business.  The Defendant also operated a photo booth business, which was not disclosed in

the Debtors' schedules filed on the petition date, which the Defendant stated was an oversight.

The Complaint quotes the Defendant's testimony, and proffers of counsel, at the 341

Meeting stating that he had decided to shut down the business.  See Complaint ¶ 18.  Mr.

Finberg, the Debtors' attorney, proffered that due to health issues the Defendant does not operate

the business, but that if the Defendant could find someone to do jobs, he might continue.  Mr.

Finberg further stated "the only intention right now is to honor the jobs that he's been paid for . .

. ."  See Complaint ¶ 18 (emphasis added) (quoting Transcript of 341(a) Meeting at 31:2-9 (Jan.

20, 2017)) (the "Transcript").

Shortly after that Ms. McDowell, the Plaintiffs' attorney, asked what the Defendant

would do if he were called the next day with a potential job.  The Defendant stated that his

answer would be "[s]orry, at this time we're not taking on any new business."  Transcript at

32:2-9.  The Defendant was then asked "you have no intention of taking on new business at all

from now?"  Id. at 32:10-12.  He responded "[a]t the moment, no."  Id. at 32:13-14.

---

[1]  The Court may consider documents attached to, or referenced in, the Complaint when deciding
a motion to dismiss.  See Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 559-60 (3d
Cir. 2002) (quoting 62 Fed. Proc., L.Ed. § 62.508).

NOT FOR PUBLICATION

When asked what could make that answer change, the Defendant referenced bad health and the need to "take a step back." See id. at 32:18-33:6.

In addition to the above testimony, Mr. Finberg stated at the 341 Meeting that he and the trustee had discussed the potential of the Defendant redeeming or buying one of the photo booths back from the trustee for future business, even though the Defendant was "not in a position that he can handle the business from it by himself right now." Transcript at 15:20-16:4 (emphasis added).

On March 1, 2017, the Debtors filed the Amended Statement. Among the amendments is a statement of income from the photo booth business. See Complaint ¶ 23. The Amended Statement also discloses ownership of the photo booth business and states that the business is "operational." Amended Statement ¶ 27.

Because the Plaintiffs did not believe the Debtor's testimony at the 341 Meeting, see Complaint ¶ 20, their attorney assigned a paralegal to email the photo booth business to request a quote, which request was sent on March 2. 2017. See id. ¶ 21. On March 26, two days after being discharged, the Defendant responded to the paralegal's inquiry and provided pricing related to the inquiry, and sent a follow-up email on April 23. See id. ¶¶ 26, 30.

The photo booth company also posted photos on Facebook related to parties on March 18 and March 31, and the company's website is still active. See id. ¶¶ 28-29.

### Discussion

#### A.  Rule 12(b)(6) Standard

Under Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  A complaint is plausible on its face "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." In re Magna Entm't Corp., 438 B.R. 380, 386 (Bankr. D. Del.

2010) (citing Iqbal 556 U.S. at 678 (quoting Twombly, 550 U.S. 544)).  "Determining whether a

complaint is facially plausible is a 'context-specific task that requires the reviewing court to draw

on its judicial experience and common sense.'" Id.

To evaluate a complaint in light of a motion to dismiss, the court must complete a two

part analysis to determine whether dismissal is proper.  First, the court must "distinguish between

factual allegations and legal conclusions in the complaint." Culinary Serv. of Del. Valley, Inc. v.

Borough of Yardley, 385 Fed. App'x. 135, 140 (3d Cir. 2010) (citing Phillips v. County of

Allegheny, 515 F.3d 224, 233-34 (3d Cir. 2008); Iqbal 556 U.S. at 678-85).  Second, if the

complaint sets forth well-pleaded factual allegations, the court may assume their veracity and

draw inferences favorable to the non-moving party, but then must determine whether the factual

allegations show an entitlement to relief. Id.

### B.  Section 727(d)(1)

Under 11 U.S.C. § 727(d) "the court shall revoke a discharge ... if such discharge was

obtained through the fraud of the debtor and the requesting party did not know of such fraud

until after the granting of the discharge." 11 U.S.C. § 727(d)(1).  The party seeking to revoke the

debtor's discharge bears the burden of proof. See In re Stedham, 327 B.R. 889 (Bankr. W.D.

Tenn. 2005).  In order to defeat the Motion, the Complaint must allege facts that:  (a) the

discharge was obtained by fraud; and (b) the Plaintiffs did not know of such fraud until after the

discharge was granted. See id. at 897.  To satisfy the fraud requirement, the Plaintiffs must

allege fraud in fact that would have barred the debtor's discharge had it been discovered before

discharge was granted." See McDonnell v. Blaine, 2014 WL 1245872, *2 (Bankr. D. N.J. 2014).

A plaintiff can show circumstantial evidence or a course of conduct. See id. (citing In re Spitko, 337 B.R. 272, 301 (Bankr. E.D. Pa. 2006)).

The Complaint does not satisfy the pleading standards of Iqbal and Twombly because the Plaintiffs do not set forth facts to show that there was a fraud in fact, or that they could not have discovered these facts until after the discharge was entered.

The Defendant's testimony and proffers of counsel at the 341 Meeting were not that the Defendant had decided to permanently close the photo booth business and end operations. Instead, the testimony was that at the time of the 341 Meeting he did not intend to operate the business, but he was not barring the potential that the business may resume at some point in the future. Mr. Finberg proffered that due to health issues the Defendant was not operating the business, but that if the Defendant could find someone to do jobs, operations might continue. Mr. Finberg further stated "the only intention right now is to honor the jobs that he's been paid for . . . ." See Transcript at 31:2-9 (emphasis added).

Shortly after that Ms. McDowell asked what the Defendant would do if he were called the next day with a potential job. The Defendant stated that his answer would be "[s]orry, at this time we're not taking on any new business." Transcript at 32:2-9. The Defendant was then asked "you have no intention of taking on new business at all from now?" Id. at 32:10-12. He responded "[a]t the moment, no." Id. at 32:13-14.

When asked what could make that answer change, the Defendant referenced bad health and the need to "take a step back." See id. at 32:18-33:6.

In addition to the above testimony, Mr. Finberg noted that he and the trustee had discussed the potential of the Defendant redeeming or buying one of the photo booths back from the estate for future business, even though the Defendant was "not in a position that he can handle the business from it by himself right now." Transcript at 15:20-16:4 (emphasis added).

NOT FOR PUBLICATION

The above testimony was not that the Defendant had decided to shut down a business permanently. Instead it was of a person who did not know what would happen in the future - the trustee may seek to sell the business, and the business may lose customers and potential customers in light of the bankruptcy case. Such testimony is common for debtors who operated businesses prior to filing bankruptcy.

The fact that the Defendant may have later determined to continue operations (which was disclosed in the Amended Statement), was not fraud. Therefore, the Motion must be granted because the Plaintiffs did not allege facts sufficient to show that there was fraud in fact.

More importantly, the Plaintiffs cannot allege facts to satisfy the second element – that the Plaintiffs did not know of the alleged fraud prior to the discharge. There is a split of authority over the meaning of the "did not know" requirement. In <u>In re Lawrence</u>, 2012 WL 71601 (Bankr. D.N.J. 2012), the court noted:

> The majority rule is that a party asking for revocation must have diligently investigated any possibly fraudulent conduct as soon as he or she becomes aware of facts indicating fraud. <u>Mid–Tech Consulting, Inc. v. Svendra</u>, 938 F.2d 885, 888 (8th Cir. 1991); <u>Lightfoot v. Landry (In re Landry)</u>, 350 B.R. 51, 56–57 (Bankr. E.D. La. 2006). The minority rule requires actual knowledge, which in this case the Trustee did not have. <u>In re Dietz</u>, 914 F .2d 161 (9th Cir. 1990). In light of the policy favoring a fresh start, this court will follow the majority rule.

<u>Lawrence</u>, 2012 WL 71601, at *6. This Court agrees with the majority rule for the reason discussed in <u>Lawrence</u> – the policy in favor of a fresh start suggests that a creditor should diligently investigate potential fraud once the creditor learns of facts indicating a fraud.

The Plaintiffs were put on notice that the Defendant may continue operating the photo booth business at the 341 Meeting. The Defendant's and his attorney's statements related to the photo booth business were that at that moment the Defendant was not taking new business, but that he might restart the business in the future and that he had discussions with the trustee about

acquiring one of the photo booths for future use. The Defendant's statements were far short of an unequivocal statement that the photo booth business was permanently shut down. Therefore, the Plaintiffs were on notice that the Defendant may have been interested in continuing with the business. The Plaintiffs should have conducted discovery to gain an understanding of the Defendant's true interest related to the photo booth business, and whether the case should have been converted to Chapter 13.

In addition, when the Debtors filed their Amended Statement on March 1 (Dkt. No. 19), the Plaintiffs were on further notice of the Defendant's intent to operate the photo booth business. Paragraph 5 of the Amended Statement lists income from the photo booth business for the years 2014-16. The Debtors also amended their response to paragraph 27, listing ownership of the photo booth business and stating that the business is "operational." See Amended Statement ¶ 27. Once the Amended Statement was filed, the Plaintiffs were on notice that the Defendant was still operating, or intended to operate, the photo booth business. To the extent that this statement was contrary to the Defendant's testimony at the 341 Meeting (and for reasons discussed above, it was not), the Plaintiffs should have taken steps prior to discharge to diligently investigate the conduct and the Defendant's intent.

For example, the Plaintiffs could have conducted a Rule 2004 examination of the Defendant to gain an understanding of why the Defendant had (in the Plaintiffs' minds) changed his testimony from no longer operating the photo booth business to stating that the business was operational. The Plaintiffs could have also inquired about whether the Defendant had received any inquiries from potential customers (presumably including the one sent by their attorneys' office) and whether the Defendant was going to act on those inquiries. Moreover, as noted during the hearing, the Plaintiffs' argument is that when the income from the photo booth business is added to the Debtors' other income, the Debtors should have been forced to proceed

with their case under Chapter 13. Therefore, the Plaintiffs seek to revoke the discharge to compel the Debtors to convert to Chapter 13. With that in mind, the Plaintiffs were on notice of the Debtors income from the photo booth business from 2014-16 and could have investigated whether the case should have been converted to Chapter 13 prior to the discharge based upon income that the Defendant would receive from jobs that he testified he would complete in 2017.

This case is similar to Mid-Tech Consulting, Inc. v. Swendra, 938 F.2d 885 (8th Cir. 1991). In Mid-Tech, the debtor had an equity interest in a cabin which was not discovered until two days after discharge when the debtor mortgaged the property. Mid-Tech, however, knew of the existence of the cabin even though it was not listed on the schedules. The Eighth Circuit held that Mid-Tech had the burden to diligently investigate any possible fraudulent conduct prior to discharge, and therefore, affirmed dismissal of the complaint. See id. at 888-89.

In this case, the Plaintiffs had knowledge of the photo booth business, the amount of income from the business, and that the business was operational according to the Amended Statement. Therefore, the Plaintiffs had the burden to diligently investigate any potential fraud prior to the discharge, and could have sought an extension of the deadline to object to discharge to ensure that the Plaintiffs had sufficient time to complete their investigation. See Fed. R. Bankr. P. 4004(b).

In fact the Plaintiffs admitted that they were suspicious of the Defendant. See Complaint ¶ 20. Nevertheless, they took little, if any, action to investigate the case or to "lock-in" the Defendant's stated intentions related to the photo booth business.

Because the Plaintiffs cannot satisfy the requirement that they did not know of the alleged fraud prior to the discharge, the Complaint must be dismissed. Moreover, this shortfall cannot be cured by amendment, therefore providing the Plaintiffs an opportunity to amend would be futile,

NOT FOR PUBLICATION

and the Court will grant the motion to dismiss with prejudice.  See In re Burlington Coat Factory

Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

## Conclusion

The Defendant's testimony and sworn statements in the Amended Statement show that

the Defendant consistently speculated that he might continue the photo booth business's

operations, therefore there was no fraud in his testimony such that the discharge should be

revoked.  The Motion also will be granted because the Plaintiffs were on notice of the alleged

potential fraud prior to the discharge and could have taken action to determine the Defendant's

intent prior to the discharge.  Finally, because there are no facts that could be alleged to satisfy

the necessary elements to revoke the Defendant's discharge, an amendment of the Complaint

would be futile and the Complaint will be dismissed with prejudice.[2]


Dated:  August 4, 2017

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE

___

[2] The Court makes no determination related to the Defendant's allegations of violations of the
Rules of Professional Conduct.  If the Defendant believes such violations have occurred, he may
pursue those alleged violations in an alternate forum.